UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS ROLAND, III,

        Petitioner,                               No. 06-CV-6543(VEB)(DGL)
                                                                            **REPORT AND RECOMMENDATION**

    -vs-

I. RIVERA,

        Respondent.
_____

**I.**       **Introduction**

Proceeding *pro se*, Thomas Roland, III ("Roland" or "Petitioner"), has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 seeking release from detention in state custody, on the basis that the judgment of conviction giving rise to his custody was unconstitutionally obtained. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for the issuance of a Report and Recommendation on the disposition of Roland's Petition. For the reasons that follow, I recommend that the Petition be denied and dismissed.

**II.**      **Factual Background and Procedural History**

Roland originally was indicted by an Erie County Grand Jury on the following charges: one count of murder in the second degree (intentional murder), one count of murder in the second degree (depraved indifference murder), one count of criminal possession of a weapon in the third degree, and one count of criminal possession of a controlled substance in the seventh degree. Pursuant to a plea bargain, he later pleaded guilty to manslaughter in the first degree. The

accusations stemmed from an incident that occurred on October 19, 2002, in which Roland was allegd to have stabbed Sandra Lucas to death by repeatedly piercing her body with a pair of scissors. In his statement to the police, Roland explained that he, Lucas, and Rodney Whittle were all sitting around Lucas' kitchen table smoking crack. According to Roland, Lucas attempted to take his crack away from him and when he did not comply, threatened him with the scissors. Roland told the police he the grabbed the scissors from her and began stabbing her.

Roland appeared in New York State Supreme Court (Erie County) (Rossetti, J.), and his attorney indicated to the court that Roland appeared to be mentally ill and possibly incompetent to participate in his defense. Roland had a past diagnosis of schizophrenia. The prosecution did not oppose the request for a competency evaluation. Accordingly, the trial court ordered a psychiatric examination of Roland pursuant to C.P.L. §730.10. The two examining experts concluded that, although Roland might be suffering from schizophrenia, he nevertheless was competent to stand trial.

Defense counsel sought a competency hearing which was granted by the trial court and held on April 14, 2004. On July 6, 2004, Justice Rossetti ruled that Roland, although possibly mentally ill, was not an "incapacitated person" as defined by C.P.L. § 730.10.

About a month later, on July 14, 2004, Roland elected to plead guilty to Justice Rossetti to one count of manslaughter in the first degree (N.Y. Penal Law § 125.20(1)) in full satisfaction of the indictment. Roland was sentenced on September 24, 2004, to a determinate sentence of eighteen (18) years, with a mandatory five-year period of post-release supervision.

On direct appeal, represented by new appellate counsel, Roland argued that his waiver of appellate rights was invalid and that the trial judge abused his discretion in imposing a harsh and

excessive sentence. The Appellate Division, Fourth Department, of New York State unanimously affirmed the conviction. The New York Court of Appeals denied leave to appeal.

This timely federal habeas Petition followed. On the form Petition, Roland states as follows: "That my waiver of my right to appeal my conviction and sentence is invalid." (Docket No. 1). Roland goes on to state, "Petitioner avers that at the instance of the plea that he did not have the intellectual capacity to understand that the acceptance of the plea agreement and sentence would prohibit him from establishing his innocence before a future Court or tribunal. As such he did not understand that he was abandoning a known right which renders the waiver of appeal void." (Docket No. 1). The relief Petitioner requests from this Court is as follows: "To grant an Order Directing that petitioner his appeal as a matter of right and remanding this case to the Appellate Division." (Docket No. 1).

Construing Roland's allegations as liberally as possible, as is required given his *pro se* status, this Court interprets his Petition as asserting that (1) his waiver of appellate rights was invalid because he lacked the intellectual ability to understand what that waiver meant; (2) he generally lacked the mental competency to voluntarily plead guilty; and (3) that his sentence was an abuse of discretion.

Respondent answered the Petition, interposing the defense of non-exhaustion, *see* 28 U.S.C. § 2254(b)(1), with regard to all of Petitioner's claims. Respondent asserts that an examination of Petitioner's direct appeal, his leave application to the Court of Appeals, and the present Petition, reflects that Petitioner at no time has presented to the State courts any ground for relief in terms of Federal constitutional law. Respondent's Memorandum of Law ("Resp't Mem.") at 3 (citing *Jones v Keane*, 329 F.3d 290, 294 (2d Cir. 2003)). Respondent argues that to

the extent Petitioner's allegations can be interpreted as asserting a challenge to the validity of his plea, based upon his alleged mental incapacity, such a claim has never been raised in state court and it therefore remains unexhausted. *Id.* (citing *Picard v Connor*, 404 U.S. 270, 275 (1971)).

Assuming that Roland's claim regarding his lack of competence is unexhausted, this Court has discretion under 28 U.S.C. § 2254(b)(2) to *deny* on the merits a habeas petition containing unexhausted claims. *See Pratt v. Greiner*, 306 F.3d 1190, 1196-97 (2d Cir. 2002); *see also Smith v. Texas,* 550 U.S. 297, 324 (2007) ("In the absence of any legal obligation to consider a preliminary nonmerits issue, a court may choose in some circumstances to bypass the preliminary issue and rest its decision on the merits.") (citing 28 U.S.C. § 2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion)). "Section 2254(b) merely gives the Court discretion to deny unexhausted petitions on the merits; it does not require the Court to determine unexhausted claims." *Otero v. Stinson*, 51 F. Supp.2d 415, 420 (S.D.N.Y. 1999).

"Section 2254(b)(2), however, 'does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion.'" *Otero*, 51 F. Supp.2d at 420 (quoting *Lambert v. Blackwell*, 134 F.3d 506, 516 (3d Cir.1997)). Neither the Supreme Court nor the Second Circuit has established what standard a district court should use to determine when to dismiss a petition on the merits rather than requiring complete exhaustion. Several district judges in this Circuit have expressed the test as whether the unexhausted claim is "patently frivolous." *E.g.*, *Turner v. Senkowski*, No. 97-CV-653, 1998 WL 912011 at *4 (W.D.N.Y. Nov. 23, 1998); *Youngblood v. Greiner*, 97 Civ. 3289, 1998 WL 720681 at *6 (S.D.N.Y. Oct. 13, 1998); *Colon v. Johnson*, 19 F. Supp.2d 112, 120, 122 (S.D.N.Y.1998);

*Hogan v. Ward*, 998 F. Supp. 290, 293 (W.D.N.Y.1998); *Edkin v. Travis*, 969 F. Supp. 139, 142 n. 1 (W.D.N.Y.1997); *Rodriguez v. Miller*, 96 Civ. 4723, 1997 WL 599388 at *3 (S.D .N.Y. Sept. 29, 1997); *Ojeda v. Artuz,* 96 Civ. 5900, 1997 WL 283398 at *3 n. 5 (S.D.N.Y. May 29, 1997). "The Third, Fifth, and Ninth Circuits have held that section 2254(b)(2) embodies the Supreme Court's pre-AEDPA holding in *Granberry v. Greer*[, 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987)] which states that a court may deny an unexhausted claim on the merits if it is 'perfectly clear that the applicant does not raise even a colorable federal claim.'" *Fayton v. Connolly*, No. 06 Civ. 3685(SAS), 2009 WL 1615995, at *4 & n.45 (S.D.N.Y. June 9, 2009) (quoting *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005); *Jones v. Morton*, 195 F.3d 153, 156 n. 2 (3d Cir. 1999); *Mercadel v. Cain*, 179 F.3d 271, 276 n. 4 (5th Cir. 1999)).

This Court need not enter that debate here for, under any standard of review, Roland has not demonstrated by a preponderance of the evidence that a violation of his constitutional rights occurred so as to warrant habeas relief.

### III. Analysis of the Petition

#### A. Invalid Waiver of Appellate Rights

Roland contends, as he did on direct appeal, that the trial court failed to conduct a proper inquiry into his understanding of the waiver of appellate rights, thereby rendering his plea involuntary. The Supreme Court has remarked that is "beyond dispute" that a defendant's guilty plea must be both knowing and voluntary. Parke v. Raley, 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). That is so because a guilty plea constitutes a waiver of three constitutional rights: the

Sixth Amendment right to a jury trial, the Sixth Amendment right to confront one's accusers, and the Fifth Amendment privilege against self-incrimination. Id. (citing Boykin, 395 U.S. at 243, 89 S.Ct. 1709).

It is equally "well settled that there is no constitutional right to an appeal"; rather, the right to a criminal as it is presently known is "purely a creature of statute." *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *accord Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987(1983). Given that a defendant may waive constitutional rights as part of a plea agreement, *id*. (citing *Town of Newton v. Rumery*, 480 U.S. 386, 393, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); *Brady v. United States*, 397 U.S. 742, 752-53, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)), "it follows logically that a defendant ought to be able to waive rights that are purely creatures of statute," *id.* Nonetheless, courts consistently have held that a defendant's waiver of his appellate rights also must be voluntarily and intelligently made. *Steele v. Filion*, 377 F. Supp.2d 332, 334 (W.D.N.Y. 2005) (Bianchini, M.J.) (citing *Magee v. Romano,* 799 F. Supp. 296, 299 (E.D.N.Y. 1992) (citations omitted); *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) ("It is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable.") (citations omitted in original)).

"Neither the Federal nor the State appellate courts have prescribed a formula that judges must follow when taking a guilty plea from a criminal defendant." *Steele*, 337 F. Supp.2d at 335 (citing *People v. Moissett*, 76 N.Y.2d 909, 910-11, 563 N.Y.S.2d 43, 564 N.E.2d 653 (1990) ("We have consistently held that trial courts are not required to engage in any particular litany during an allocution in order to obtain a valid guilty plea in which defendant waives a plethora of rights.") (citations omitted). However, due process requires that the record of the plea

proceedings show a voluntarily and intelligently made decision by the accused to plead guilty. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."); *Parke v. Raley*, 506 U.S. at 29, 113 S.Ct. 517).

As a matter of New York State law, the courts require that a trial court conducting a plea colloquy distinguish between the constitutional rights that a defendant is automatically forfeiting by virtue of his guilty plea, from the statutory right to an appeal. *E.g.*, *People v. Lopez*, 6 N.Y.3d 248, 256 (N.Y. 2006) ("When a trial court characterizes an appeal as one of the many rights automatically extinguished upon entry of a guilty plea, a reviewing court cannot be certain that the defendant comprehended the nature of the waiver of appellate rights. The record must establish that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty–the right to remain silent, the right to confront one's accusers and the right to a jury trial, for example."). The Appellate Division dismissed Roland's appeal, citing to *Lopez*. In this Court's opinion, the Appellate Division did not misapply New York State law as articulated in *Lopez*. After questioning Roland about whether he understood the constitutional rights he was relinquishing by pleading guilty (e.g., the right to a jury trial and to confront his accusers), the trial court separately questioned him about his understanding of his right to appeal.

| | |
|---|---|
| The Court: | Do you understand that you're also waiving your right to appeal any decisions that the court has made in this matter as of this date? Do you understand that? |
| The Defendant: | Yes. |
| The Court: | Do you understand you're giving up of [sic] your right to |

>           appeal to a higher court, that means a higher court can't
>           review this matter from the 19th day of October, 2002, to
>           and including the date of sentence because you know
>           basically what the sentence is going to be? Do you
>           understand that?
> The Defendant:    Yes.

Transcript of Plea Proceeding dated July 14, 2004, at pp. 11-12. Roland was never told that his right to appeal had to be relinquished as a necessary part of pleading guilty, as was found to be erroneous in *People v. Billingslea*, 6 N.Y.3d 248. Thus, there does not appear to be any error of New York State law.

Most importantly, Roland has not pointed out, nor is the Court aware of, any Federal precedent standing for the proposition that the trial court must employ specific language when apprising a defendant pleading guilty of the individual rights relinquished. Accordingly, Petitioner has not set forth an error of constitutional magnitude redressable in this habeas proceeding. *Accord*, *e.g.*, *Salaam v. Giambruno*, 559 F. Supp.2d 292 (W.D.N.Y.2008) (Bianchini, M.J.) (petitioner's claim that his waiver of appellate rights was invalid because the trial court "did not ask petitioner to explain in his own words his understanding of what this waiver meant" did not state a basis for habeas relief); *Nicholas v. Smith*, No. 02 CV 6411(ARR), 2007 WL 1213417, at *10-11 (E.D.N.Y. Apr. 24, 2007) (rejecting habeas petitioner's argument that the state court's failure to make perfectly clear that petitioner was being asked to waive his right to appeal as part of his plea bargain, rather than forfeiting it as a matter of law as part of the guilty plea). This claim accordingly should be dismissed.

    **B.**     **Invalidity of Guilty Plea and Appellate Rights Waiver Due to Mental Incompetency**

Roland's allegations in his Petition are scanty in that he merely states that he lacked the

mental competence to understand that he was giving up his right to appeal. In support of his motion to appoint counsel, Roland submitted copies of a psychological evaluation conducted by NYSDOCS during his incarceration which indicates, *inter alia*, that Roland has a Full Scale IQ of 60. The Court has reviewed this documentation as well as the transcript of the competency hearing held pursuant to C.P.L. § 730.10. After doing so, the Court concludes that Roland has not demonstrated that he was not mentally incompetent to waive the constitutional rights encompassed within a guilty plea and, *a fortiori*, he was not mentally incompetent to waive his statutory right to appeal.

Gauging a defendant's competence to plead guilty requires asking whether has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (adopting the same competency standard used to judge a defendant's ability to stand trial, as set forth in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

It bears noting that "[n]o clearly established Federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), indicates that [Petitioner's] low I.Q. and history of mental impairment alone required the trial court *sua sponte* to order a competency hearing." *Davis v. Keane*, 45 Fed.Appx. 31, *32, 2002 WL 2009559, **1 (2d Cir. Sept. 3, 2002) (unpublished opn.) (citing *Atkins v. Virginia*, 536 U.S. 304, ___, 122 S.Ct. 2242, 2250-51, 153 L.Ed.2d 335, ___(2002) ("Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. . . . Their deficiencies do not warrant an exemption from criminal sanctions . . . .")).

Here, the trial court ordered a competency hearing at which two expert witnesses testified as to their findings after examining Roland. First, Dr. Liebergall, a psychologist, testified that in his opinion, Roland "made every effort to present that he didn't understand" what was occurring and that "[h]e did it to such an extreme, [that is,] not knowing the answers to basic questions in his history, that it didn't ring true." CH.7 ("CH." followed by a numeral(s) refer to pages from the competency hearing transcript held on April 14, 2004). Dr. Liebergall had a "sense" that there was "an underlying mental illness" but "also very prominent was an effort to look his very worst for [the doctor's] benefit. . . ." CH.7-8. That day, Dr. Liebergall spent between 30 and 45 minutes with Roland; their interview was curtailed because Roland was "not being particularly productive and not interested in giving much history about himself." CH.9. Dr. Liebergall acknolwedged that Roland had a severe substance abuse problem and had been diagnosed four years previously with schizophrenia. CH.11, 12. However, Dr. Liebergall testified,

> I think that the manner in which [Petitioner] attempted to control the – providing information to me suggested that he was quite clear about what he was charged with. He knew that he had made a statement and he knew that he was in serious trouble. I don't think that – again, I think that his psychosis was not really active. I think there was very strong motivation to avoid this whole situation. It's understandable, but I don't think it's a mental illness as such.

CH.8. Dr. Liebergall testified that even if Roland was suffering from schizophrenia, it did not necessarily mean that he would not understand the nature of the charges against him or be unable to assist in his defense. CH.41. Dr. Liebergall testified that it was his opinion, as an expert, that Roland had the capacity to understand the proceedings and assist in his defense as defined in C.P.L. § 730.10. CH.10. *See also* CH.39 ("[T]here was nothing to indicate . . . that there was much going on in the interview . . . except someone who was again making every effort to

dissimulate[,] if you will[,] in the form of ["]I know nothing, I don't understand this and I don't want to deal with this.["]).

Dr. Joseph, the chief of forensic psychiatric services for the Erie County Department of Health, testified next. Dr. Joseph saw Roland when he was first admitted to custody in February 2004, at which time he prescribed zyprexa, an anti-psychotic medicine. Dr. Joseph saw him again on March 8, March 22, and April 5, 2004. CH.46.

Dr. Joseph explained that he was "not totally convinced that [Roland] was suffering from a schizophrenic illness" but "in view of the history [he] felt it was prudent to continue the medication until there was some clearer reason to discontinue it," CH.47, and he expressed concern that Roland "needed to be believed" and that discontinuing the medication might precipitate an adverse event.

Dr. Joseph's impression was that Roland was "evasive as opposed to being vague or perplexed, which would be more in keeping with a schizophrenic illness." CH.48. For instance, Roland claimed to not know how old he was, "which was highly unusual for somebody with a mental illness and sometimes put forward by people who are attempting to look as if they're mentally ill because they don't know exactly what to say." CH.46. Roland also denied using drugs and alcohol, which was demonstrably untrue based upon his documented medical history. CH.61.

Dr. Joseph explained that Roland became "more direct, conversive [sic], normal[,] if you will[,] as the interview progressed" and had "an explanation for the events leading to his arrest which was certainly reasonable and rational[,]" and "not the productions of a psychotic illness." CH.48, 49. Roland he gave "no evidence that he could not work effectively with his attorney."

CH.48. Dr. Joseph testified that to a reasonable degree of medical certainty, Roland was competent to proceed to trial. Dr. Joseph estimated Roland's intelligence as "low average" which was a "little bit different than borderline mental retardation", and he took this into account in assessing Roland's credibility. CH.59.

Dr. Joseph opined that Roland was malingering based upon his ability to articulate some details about his history (i.e., he had eight hospitalizations, had achieved a twelfth grade education, that the police held a gun to his head) while at the same time being unable to state what year it was or describe the roles of the judge, jury, and attorneys at trial. CH.66. Those inconsistencies were, in Dr. Joseph's opinion, "prima facie evidence of malingering, trying to present him[self] in the way he sees it as mentally ill when, in fact, he is not . . . ." CH.66. Defense counsel questioned Dr. Joseph about his use of "unable" in his report; Dr. Joseph stated that in retrospect, he should have used the word "unwilling." CH.67. He explained that Roland "had shown enough other abilities during the course of the interview to qualify as being capable of going forward" with trial. CH.68.

By decision and order dated July 6, 2004, Justice Rossetti found that Drs. Liebergall and Joseph presented testimony that was "credible and persuasive". C.P.L. § 730.10 Order dated July 6, 2004 at 2. Based upon that testimony, Justice Rossetti found that "although [Roland was] possibly mentally ill, [he] is not an incapacitated person as defined under Criminal Procedure Law Article 730[,]" *id.* and the prosecutor had met his burden of proving Roland's capacity by a preponderance of the evidence, *id.*[1]

---

[1] "The federal courts that have considered the issue have been consistent in holding that mental competency to stand trial need be proved only by a preponderance of the evidence." *Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d 348, 351 (2d Cir. 1982) (citations omitted).

Under New York law, an "'[i]ncapacitated person' means a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. CRIM. PROC. LAW § 730.10(1). Federal courts apply a similar standard in determining a defendant's competency to stand trial; the "test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789 (1960). "'The state test for incompetency' under C.P.L. § 730.10 'appears to parallel the federal one' set out in *Dusky*." *Medina v. McGinnis*, No. 04 Civ.2515 SHS AJ, 2004 WL 2088578, at *10 (S.D.N.Y. Sept. 20, 2004) (quoting *Mead v. Walker*, 839 F. Supp. 1030, 1033 (S.D.N.Y.1993)).

"[A] trial judge's findings with respect to competency are generally accorded great deference and, even on direct review, will be upheld 'unless clearly erroneous.'" *Bisnett v. Kelly*, 221 F. Supp.2d 373, 386 (E.D.N.Y. 2002) (quoting *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995)). Thus, Roland's "burden on this collateral challenge is particularly heavy." *Bisnett*, 221 F. Supp.2d at 386 (citing *Matter of Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000) (noting that issue of whether "person is mentally incompetent to stand trial . . . has generally been held to be an issue of fact, entitled to deference by a federal habeas corpus court")). The hearing evidence thus compellingly supported the trial judge's finding of competency, and Roland has not come forward with any evidence to dispute the two expert's findings that he was mentally competent and not an "incapacitated person" within the meaning of C.P.L. § 730. Thus, the trial judge was amply justified in concluding that Roland's competency was proven by a preponderance of the evidence. *Cf. Bisnett v. Kelly*, 221 F. Supp.2d at 386-87

(rejecting habeas challenge where evidence supported finding that defendant was competent to stand trial, despite any sleep apnea from which he suffered; C.P.L. § 730.10 competency hearing evidence, including the testimony of a defense medical expert, strongly supported the finding of competency, and defendant's own physician acknowledged that his opinion (i.e., that defendant was incompetent to stand trial) depended on defense reports that defendant was frequently falling asleep in court, and such reports were directly contrary to the trial judge's own observations). Accordingly, Roland's claims regarding his alleged mental incapacity should be dismissed.

### C. Abuse of Discretion in Sentencing

"A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court." *Steele*, 377 F. Supp.2d at 335-336 (citing *Fielding v. LeFevre,* 548 F.2d 1102, 1109 (2d Cir.1977) (holding that petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *Steele*, 377 F. Supp.2d at 337 (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *Ross v. Gavin*, 101 F.3d 687 (2d Cir.1996) (unpublished opinion)).

Roland pleaded guilty to one count of first degree manslaughter (N.Y. Penal Law §

125.20(1))², which is defined as a class B violent felony offense. *See* N.Y. Penal Law § 70.02(1)(a). Section 70.02(2)(a) provides that the sentence imposed upon a person convicted of a class B violent felony offense must be a determinate sentence of at least 5 years and must not exceed 25 years. *See* N.Y. Penal Law § 70.02(2). Because Roland's sentence of 18 years was not outside of the applicable statutory range, his sentencing challenge does not present a constitutional claim upon which habeas relief can be granted. This claim accordingly should be dismissed.

### IV. Conclusion

For the foregoing reasons, I recommend denying petitioner Thomas Roland, III's request for a writ of habeas corpus and dismissing the petition. In addition, I do not recommend issuance of a certificate of appealability as Roland has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 6, 2011
Rochester, New York.

---

² "A person is guilty of manslaughter in the first degree when: 1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 120.25(1).

# ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to

petitioner and respondent.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 6, 2011
Rochester, New York